**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 06 2014, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HUGH N. TAYLOR**
Hugh N. Taylor, P.C.
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ZAO BURRELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 76A03-1305-CR-165 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE STEUBEN SUPERIOR COURT
The Honorable William C. Fee, Judge
Cause No. 76D01-1206-MR-1

**March 6, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Zao Burrell appeals his sentence for murder, attempted murder as a class A felony, and carrying a handgun without a license as a class A misdemeanor. Burrell raises one issue, which we revise and restate as whether his sentence is inappropriate in light of the nature of the offense and the character of the offender. We affirm.

FACTS AND PROCEDURAL HISTORY

In June of 2012, Burrell was living with Michael Forrester in Angola, Indiana. On June 3, 2012, Burrell, Forrester, and others were at Forrester's residence, and over the course of that day they manufactured three batches of methamphetamine. At around midnight, Jared Pease, who was at the residence, received a phone call from Tracia Handshoe, ("Trey"), who asked if she could come over to purchase some methamphetamine. Some time later, Trey and Brent Dombroski arrived at Forrester's residence.

Burrell did not like Dombroski based upon a previous incident, and upon discovering that Dombroski was in the home, Burrell pulled Forrester into the bathroom, showed Forrester a handgun, and loaded a bullet into the gun's chamber. Burrell exited the bathroom and began to place the newly-manufactured methamphetamine into bags. Trey gave Forrester $50 in exchange for half a gram of methamphetamine. Trey, Dombroski, Pease, and Forrester then smoked some of the methamphetamine, and later Dombroski "wanted to see the bag on the scales" and Forrester asked Burrell for the scales. Transcript at 611. Burrell asked Forrester why he needed the scales, and Forrester explained that Dombroski wanted to see the bag on them. Burrell told Forrester to have Dombroski come to the kitchen. After Dombroski put the bag on the scales,

2

Burrell "told him that he f----- up that he took some out of it," and Dombroski stated that Burrell "already had the money and he didn't want no problems." Id. at 612, 764. Burrell shot Dombroski in the chest.

Forrester yelled at Burrell and Pease and asked if they could help take Dombroski to Pease's truck. When they were at the truck Burrell started slamming Dombroski's arms and legs against the tailgate. Burrell also told Forrester and Pease to tell police that Dombroski had shot himself. Pease and Trey drove Dombroski to the hospital where Dombroski died soon after arrival.

Meanwhile, at the residence, Burrell told Forrester that he needed to kill all of the eyewitnesses, and the men began cleaning up the blood and methamphetamine precursors. Burrell loaded his clothing and methamphetamine precursors into the vehicle of his father, Danny Burrell, who had been present during the shooting, and the three men cleaned the residence for a few hours and disposed of some of the precursors in a burn pit. Burrell told Forrester that they needed to dispose of Dombroski's vehicle, which was in the driveway, and they drove it to Ohio and abandoned it in a parking lot. Burrell stole the stereo from the front console before abandoning the vehicle. Danny drove the three men back to Forrester's residence while Burrell sat in the front passenger's seat and Forrester sat in the rear passenger's seat.

While driving back, the vehicle passed a police vehicle occupied by Deputy Rich McCarty of the Steuben County Sheriff's Office, and Deputy McCarty recognized the vehicle as matching a description that had come over the dispatch. He began to follow the vehicle, and he recognized Danny and initiated a traffic stop. Burrell pointed his gun

3

at Danny and "told him to go," Danny accelerated, and a chase ensued. Id. at 656. During the chase, Burrell reached backwards out the passenger's side window and shot at Deputy McCarty, firing about fifteen or sixteen times. One bullet struck the vehicle and caused the grill of the vehicle to fly off. Upon reaching Williams County, Ohio, Danny stopped the vehicle, and Burrell jumped out of the passenger's side door and ran into the woods. Danny and Forrester exited the vehicle and were apprehended. The next day, police received information regarding Burrell's whereabouts, and, following a second police chase in which Burrell pointed a firearm at Deputy Bryan Heine, Burrell was arrested.

On September 10, 2012, the State filed an amended information charging Burrell with Count I, murder; Count II, felony murder; Count III, attempted murder as a class A felony; and Count IV, carrying a handgun without a license as a class C felony. A jury trial commenced on March 7, 2013, and on March 16, 2013, the jury found Burrell guilty as charged except that the guilty verdict under Count IV was entered as a class A misdemeanor. On April 5, 2013, the court sentenced Burrell to sixty-five years on Count I, murder, forty years on Count III, attempted murder, and one year on Count IV, carrying a handgun without a license, and the court ordered that Counts I and IV be served concurrently to one another but consecutively to Count III. The court vacated Count II based on double jeopardy concerns. Thus, Burrell was sentenced to an aggregate term of 105 years.

DISCUSSION

The issue is whether Burrell's sentence is inappropriate in light of the nature of the offense and his character.[1] Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Burrell argues that both he and the victim, Dombroski, were involved with methamphetamine, that there was an argument over the weight of the methamphetamine sold to Dombroski, that it appeared Dombroski tried to cheat him, and that this attempt led to the shooting. He maintains that "[t]here was no lying in wait, multiple gun shots, children near, mutilation of the body or other such despicable actions by" him and that he "even tried to help get [Dombroski] to the hospital," and accordingly he is not among the

---

[1] We note that the focus of Burrell's argument in his brief relates to the trial court's failure to find as a mitigating factor that Dombroski "induced or facilitated the offense." Appellant's Brief at 17. Thus, Burrell appears to raise the issue of whether the court abused its discretion in sentencing him, which is a distinct issue from our powers of review under Ind. Appellate Rule 7(B). See King v. State, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008) ("[I]nappropriate sentence and abuse of discretion claims are to be analyzed separately." (citing Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007))). However, we have previously stated that "even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate." Mendoza v. State. 869 N.E.2d 546, 556 (Ind. Ct. App. 2007), trans. denied; see also Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (holding that in the absence of a proper sentencing order, we may either remand for resentencing or exercise our authority to review the sentence pursuant to Ind. Appellate Rule 7(B)), reh'g denied; Shelby v. State, 986 N.E.2d 345, 370 (Ind. Ct. App. 2013) (holding that "even if the trial court did abuse its discretion by failing to consider the alleged mitigating factor of residual doubt, this does not require remand for resentencing"), trans. denied. Accordingly, we need not discuss Burrell's contentions that the court abused its discretion in sentencing him if we determine that his sentence is not inappropriate.

5

worst offenders warranting a maximum sentence. Appellant's Brief at 16. He also argues that he was from a lower class family and had been abused, that his parents were drug and alcohol abusers, and that he was only twenty-four years old when the incident occurred.

Our review of the nature of the offense reveals that Burrell was engaged in the manufacture of methamphetamine when Trey and Dombroski arrived at the residence. Burrell pulled Forrester into the bathroom, showed him a handgun, and loaded a bullet into the chamber. Burrell shot Dombroski after an apparent argument over the amount of the drug that had been sold to Dombroski. While attempting to move Dombroski to Pease's truck, Burrell slammed Dombroski's arms and legs against the truck's tailgate. Also, while attempting to cover up the murder, Burrell asked Pease and Trey to fabricate a story about Dombroski shooting himself, and he stole Dombroski's stereo after moving Dombroski's vehicle to a parking lot in Ohio. When police came upon Danny's car, Burrell pointed his firearm at Danny, his father, and ordered him to attempt to evade the police. During the ensuing chase, Burrell shot at Deputy McCarty about fifteen or sixteen times, and one of the bullets hit the police car and caused damage. He also was involved in a second police chase the next day and pointed a firearm at Deputy Heine.

Our review of the character of the offender reveals that in his presentence investigation report ("PSI") prepared in advance of sentencing, Burrell described his family as being lower class and that his parents divorced when he was six years old and had drug and/or alcohol abuse issues. The PSI also reveals that, although Burrell was twenty-five years old at sentencing, he had amassed an extensive criminal history. As a

juvenile, in January 2002, two counts of theft against him were found true, and he was placed on probation. On February 24, 2003, a motion seeking modification of his probation was filed alleging that he committed a subsequent offense, was expelled from school, and tested positive for marijuana. He was subsequently removed from his home and placed at the Youth Opportunity Center in Muncie, Indiana. In December 2004, a count of reckless driving against him was found true. In 2005, charges were filed alleging Burrell to be delinquent for committing domestic battery and battery resulting in serious bodily injury under different cause numbers, and these charges were waived into adult court. He was convicted of domestic battery in May 2006 and was sentenced to one year suspended to probation, and in August 2006 he was convicted of battery resulting in serious bodily injury and was sentenced to one year with all but thirty days suspended. His probation was revoked in June of 2007, and he was ordered to serve ninety days of his previously-suspended sentence.

Also in 2006, Burrell was convicted of criminal recklessness as a class D felony in Steuben County and for false informing and carrying a handgun without a license in LaGrange County. He was sentenced to two years with all but 180 days suspended and was placed on probation for the criminal recklessness charge. His probation was revoked in November 2007 for testing positive for methamphetamine, and was again revoked in 2009. On the LaGrange County convictions, he was sentenced to an aggregate term of 180 days executed and 185 days suspended. Burrell twice violated his probation in connection with these convictions. In 2009, he was convicted of possession of methamphetamine as a class C felony and sentenced to five years in the Department of

7

Correction, and his sentence was ordered to run consecutive to his sentence for his 2006 criminal recklessness conviction. While on parole from this conviction, he committed the instant offenses.

Burrell has demonstrated an inability to lead a law-abiding life, and indeed showed contempt for the law during the commission of the instant crimes when he fired fifteen or sixteen shots at Deputy McCarty and pointed a firearm at Deputy Heine. After due consideration of the trial court's decision and in light of Burrell's criminal history, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

## CONCLUSION

For the foregoing reasons, we affirm Burrell's sentences for murder, attempted murder as a class A felony, and carrying a handgun without a license as a class A misdemeanor.

Affirmed.

ROBB, J., and BARNES, J., concur.